O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUNETTA EDDINGS, individually and on behalf of a class of similarly situated individuals,<br><br>                    Plaintiff,<br><br>          v.<br><br>HEALTH NET, INC., et al.<br><br>                    Defendants. | CASE NO. CV 10-1744-JST (RZx)<br><br>**ORDER GRANTING (1) PLAINTIFF'S MOTION FOR FINAL SETTLEMENT APPROVAL AND (2) PLAINTIFF'S APPLICATION FOR ATTORNEYS FEES, COSTS, AND ENHANCEMENT AWARD** |

1 Before the Court is Plaintiff Shaunetta Eddings' Unopposed Motion for Final
2 Approval of Settlement ("Settlement Motion") and an Unopposed Application for
3 Attorneys Fees, Costs, and Service Award ("Attorney's Fees Motion"). (Settlement Mot.,
4 Doc. 226; Fees Mot., Doc. 225.) The Court also ordered supplemental briefing to further
5 substantiate Plaintiff's counsel's request for costs. Having reviewed the papers, held a
6 fairness hearing, and taken the matter under submission, the Court GRANTS Plaintiff's
7 Motions.

**BACKGROUND**

10 On October 6, 2010, Plaintiff filed the operative complaint, the Second Amended
11 Complaint ("SAC"), against Defendants Health Net, Inc.; Health Net of California, Inc.;
12 Health Net Federal Services, LLC; Managed Health Network, Inc.; Health Net of the
13 Northeast, Inc.; Health Net Pharmaceutical Services, Inc. (collectively "Defendants").
14 Plaintiff's SAC asserted that Defendants violated the Fair Labor Standards Act ("FLSA")
15 and various California state labor laws by failing to pay Plaintiff, and other similarly
16 situated employees, for all time worked, based on time worked "off-the-clock" and
17 Defendants' alleged rounding of timekeeping entries. (Mem. P. & A. ISO Mot. ("Memo.")
18 at 2, Doc. 212-1.)
19 On February 23, 2011, the Court conditionally certified a nationwide class under the
20 FLSA based solely on Defendants' timekeeping and rounding policies. (Doc. 109.) The
21 Court also certified a class under Plaintiff's state law claims for failure to pay straight-time
22 wages, failure to pay overtime wages, failure to pay all compensation due and owing at
23 termination, failure to provide accurate wage statements, and violation of California
24 Business & Professions Code § 17200, *et seq*. (*Id.*) Plaintiff's other claims were not
25 certified and are retained by her in her individual capacity. (*Id.*)
26 On March 23, 2012, the Court granted in part and denied in part Defendants'
27 motion for partial summary judgment. (Doc. 202.) The Court granted summary judgment

against claims arising from the rounding system that was in place after July 19, 2008, and denied summary judgment on claims arising from the timekeeping system between March 10, 2006, to July 18, 2008, and also denied the motion as to the claim for failure to timely pay wages due at termination pursuant to California Labor Code § 203. (*Id.*)

On September 18, 2012, Plaintiff filed an unopposed motion for preliminary approval of a class settlement, which the Court ultimately granted on January 16, 2013. (Approval Order, Doc. 219.)[1]

Following the Court's preliminary approval of the parties' settlement, the parties' Claims Administrator issued notice to the class pursuant to the terms of the Settlement Agreement. (Settlement Mot. Mem. P. & A. at 1, Doc. 226-1.) This included an estimate of the class members' recovery and provided an opportunity to opt-out. (*Id.* at 2.) Six class members have opted out of the settlement; none has filed an objection. (*Id.* at 1.)

Under the Settlement Agreement, Defendants have agreed to pay $600,000 as the total settlement fund ("Settlement Fund"), without admitting any liability, and to deposit the money with a settlement administrator following approval. (Jason M. Lindner Decl. ("Lindner Decl. II") Ex. A ("Settlement Agreement") ¶¶ 39, 45, Doc. 216-2.)[2] Each Class Member who did not opt out will receive a cash payment, with a minimum payment of $25. (*Id.* ¶ 45(d)(v).) Each Class Member's share of the Settlement is based on a *pro rata* share of the funds based on that Class Member's time worked within the relevant time period, his or her rate of pay, and multipliers including whether he or she worked in California, whether he or she opted in to the FLSA claim, and his or her standing as a terminated employee within the applicable statute of limitations period to maintain a claim for penalties under California Labor Code § 203. (*Id.* ¶ 45(d).)

---

[1] The Court previously ordered supplemental briefing from the parties and required a change to the proposed *cy pres* recipient in the Settlement Agreement in light of the Ninth Circuit Court of Appeal's *cy pres* jurisprudence. *See, e.g.*, *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).

[2] Defendants will also pay the employer's portion of applicable payroll taxes. (*Id.*)

The Settlement further provides that funds remaining after distribution to Class Members—including checks uncashed after 320 days and checks returned as undeliverable—are to be distributed in *cy pres* to the Legal Aid Society-Employment Law Center. (*Id.* ¶ 45(e).)

Under the Settlement, Plaintiff's counsel may apply for up to one-third of the Settlement Fund (*i.e.*, $200,000), and Defendants agree to not oppose such a motion. (*Id.* ¶ 45(a).) Plaintiff's counsel also has the right to seek an "enhancement award" of up to $6,000 for Plaintiff Shaunetta Eddings, based on her service as class representative and in consideration for her execution of a general release. (*Id.* ¶ 45(b).)

Class Members who do not opt-out agree to release Defendants from liability for all unpaid wage claims related to rounding of time, including self-rounding, during the period before July 18, 2008, excluding the FLSA claims of Class Members who did not affirmatively opt-in to this lawsuit. (*Id.* ¶ 43(a).)

**FINAL APPROVAL OF SETTLEMENT**

**I. LEGAL STANDARD**

Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant;[3] and [8] the reaction of the class members to the proposed

---

[3] This factor does not apply to this case.

4

settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

## II. DISCUSSION

A consideration of the above-enumerated factors favors final approval of the proposed settlement.

### A. *Strength of Plaintiff's Case*

As noted in the Court's Order Granting Preliminary Approval, Plaintiff believes her case has serious merit. But Plaintiff also notes that that a "wage and hour class action involving analysis of timekeeping systems is complex in and of itself, and such complexity adds to the risk of confusion if this case were to be tried in front of a jury." (Settlement Mot. Mem. P. & A. at 6, Doc. 226-1.) Defendants have shown that they are committed to vigorously litigating this case; indeed, they narrowed Plaintiff's claims at both the class certification and summary judgment stages.

This factor weighs in favor of approval.

### B. *Likely Expense and Duration of Further Litigation*

The next stage of this litigation is the last—trial. Thus, if settlement were not reached, Plaintiff and class members would likely incur additional costs in preparing for and participating in trial. The Court finds that this factor favors approval of the Settlement Agreement. "Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff

class." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) (internal citation and quotation omitted).

### C. *Risk of Maintaining Class Certification*

The Court is not aware of any specific risks in maintaining class certification through the litigation. Accordingly, the Court need not consider this factor for settlement purposes. *See In re Veritas Software Corp. Sec. Litig.,* No. C-03-0283 MMC, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"), *aff'd in relevant part*, 496 F.3d 962 (9th Cir. 2007); *Murillo v. Pac. Gas & Elec. Co.*, No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *7 (E.D. Cal. July 21, 2010) (favoring neither approval nor disapproval of settlement where the court was "unaware of any specific difficulty in maintaining class-action status were [the] case to continue to trial").

### D. *Amount Offered in Settlement*

When compared to the strength (and weaknesses) of Plaintiff's case, the Court finds that the settlement amount of $600,000 is fair, adequate, and reasonable under the circumstances. Considering the present value of the settlement amount, the probability of further expensive litigation in the absence of settlement, the risk that Plaintiff and the class would not have succeeded at trial, and the risk that the jury might award lesser damages, the Court finds the settlement amount for disbursement to class members within the range of reasonableness.

Relatedly, the Court finds the plan of allocation of the settlement funds to be reasonable. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) ("Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable and adequate.'") (citations omitted). Here, the division of the funds

between the participating class members based on time worked, pay rate, and multipliers, including whether they worked in California, appears reasonable.

The amount of the settlement is also fair, adequate, and reasonable in light of the claims released by the participating class members and those class members who fail to exclude themselves from the Settlement Agreement. The proposed agreement will release class members' wage and hour claims only as they relate to rounding of time, and will not release all potential employment claims.[4] (*See* Settlement Agreement ¶ 43(a).) In addition, the Settlement Agreement ensures that only participating class members will release any potential FLSA claims against Defendants. (*Id.*)

The *cy pres* distributions are also appropriate. Pursuant to the Settlement Agreement, any funds remaining after distribution to class members are to be distributed in *cy pres* to the Legal Aid Society-Employment Law Center. (Settlement Agreement ¶ 45(e).) Similarly, any funds remaining from the $55,000 allocated to cover the Settlement Administrator's costs are also set to be distributed in *cy pres* to the Legal Aid Society-Employment Law Center. (*Id.* ¶ 45(c).)

The Ninth Circuit has established clear standards on *cy pres* distributions in class-action settlements. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). Instead there must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). "A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff's class." *Id.* (internal citations and quotation marks omitted).

As the Court explained in the Approval Order, in the instant case, an appropriate charity is one that is "dedicated to protecting [workers] from, or redressing injuries caused

---

[4] Per the Settlement Agreement, Eddings will execute a general release. (*See* Settlement Agreement ¶ 44.)

7

by," violations of labor laws. The proposed *cy pres* award comports with those principles. As the Court previously explained:

> The Legal Aid Society – Employment Law Center ("LAS-ELC") has as its mission "promot[ing] the stability of low-income and disadvantaged workers" by "[u]sing the law as a tool." The LAS-ELC has, *inter alia*, a Wage and Hour Program that works "to ensure that all workers benefit from laws that regulate pay and work hours." Moreover, the "Program's goal is to educate workers about their wage-and-hour rights." The Program provides information to workers through "fact sheets, self-help guides, presentations, and legal advice," and the group "helps protect workers from unlawful practices by providing them with the tools to advocate on their own behalf." Finally, the LAS-ELC engages in class-action litigation on behalf of workers with wage claims in both state and federal courts. The Legal Aid Society – Employment Law Center is a suitable *cy pres* recipient in this case.

(Approval Order at 9 (docket citations omitted).)

### E. *Extent of Discovery Completed*

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). In this case, discovery has been completed—indeed, a dispositive motion was brought, and the Court has ruled on it. Plaintiff's counsel represents that the parties engaged in "significant analysis" of the data Defendants produced, and that Plaintiff's counsel has analyzed the payroll and timekeeping data. (Lindner Decl. II ¶ 3, Doc. 226-2.) Plaintiff also argues that because the operation of the rounding system at issue is largely mechanical, "the data readily lent itself to estimation of the fair value of Class Members' claims." (Settlement Mot. Memo. P. & A. at 9.)

The Court finds that this factor favors approval of the Settlement Agreement.

### F. *Experience and Views of Counsel*

As the Court noted in the Approval Order, Plaintiff's counsel has extensive experience serving as counsel in class actions, and—along with Defendants' counsel—

8

they have fully endorsed the settlement agreement as fair, reasonable, and adequate. (Approval Order at 10.)

### G. *Reaction of Class Members to Proposed Settlement*

Class members have reacted positively to the proposed settlement—none filed an objection and only six requested to be excluded from the settlement. (Neila Pourhashem Decl. ¶¶ 7-11, Doc. 226-5.) The Court is satisfied that the lack of objections and only six requests for exclusion evinces a positive reaction by the Class Members to the proposed settlement.

## ATTORNEY'S FEES

The Settlement Agreement authorizes Plaintiff's counsel to request attorneys' fees up to the amount of 33 1/3% of the common fund, and in the preliminary approval stage this Court cautioned that "Plaintiff's counsel will have to provide evidence to justify an upward departure from the Ninth Circuit's fees benchmark." (Approval Order at 7.) In its subsequently filed application, Plaintiff's counsel seeks an award of attorneys' fees of $150,000.00, or 25% of the Settlement Fund. (Settlement Agreement ¶ 4; Fees Mot. at 4.) Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

The benchmark for a fee award in a common fund case is 25% of the recovery obtained. *See Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure.").

9

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable and whether a departure from that figure is warranted, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). These factors all weigh in favor of awarding attorneys' fees in the amount of $150,000.

### A. *Results Achieved*

Under the Settlement Agreement, the average award provided to each Class Member will exceed $150.00, and the Court agrees with the parties that this result supports the award sought, given the narrow scope of the certified claims. (Lindner Decl. ¶ 5, Doc. 225-2; Mem. P. & A. ISO Fees Mot. at 5, Doc. 225-1.) Moreover, the fact that only six class members opted-out and none objected further supports the conclusion that Class counsel achieved a good result for the Class.

### B. *Risk of Litigation*

The risk of litigation further supports this award. This case involves complex issues, and Defendants have vigorously litigated it—indeed, they have narrowed the class claims at issue at both the class certification and summary judgment stages. "Risk is a relevant circumstance," *Vizcaino*, 290 F.3d at 1048, particularly in this case.

### C. *Skill Required and Quality of Work*

This action required complex analysis of Defendants' timekeeping systems and their data. Class counsel has competently litigated this case from its inception, which is further evidenced by the Settlement Agreement they obtained for the Class.

### D. *Contingent Nature of the Fee*

Class counsel took this case on a contingent basis, fronting the expenses, and they have been litigating it for more than three years. They seek an award of 25% of the common fund, which is the "benchmark" in this circuit. This factor supports awarding the

fee class counsel seeks. Moreover, this result is consistent with fee awards obtained in other cases. *See, e.g.*, *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five recent wage-and-hour class actions where district courts approved attorneys' fees awards ranging from 30-33%).

## COSTS

Class counsel first seeks approval of $25,000 to be paid to the Court-approved Settlement Administrator Simpluris. The Settlement Agreement called for $55,000 to be set aside for the settlement, yet the most recent cost estimate is only $25,000. The remaining $30,000 will remain in the fund and be distributed to the Class. (Fees Mot. at 11, n.4.) The Court approves $25,000 for Simpluris, as Settlement Administrator.

Class counsel also seeks reimbursement of their costs and expenses in the amount of $130,174.43. (Mem. P. & A. ISO Fees Mot. at 10.) The Court ordered Plaintiff's counsel to file supplemental briefing to fully substantiate the costs they seek. (*See* Doc. 227.) Class counsel then filed a voluminous itemization of the costs they have incurred in prosecuting this suit. (*See* Doc. 228-1.) Having reviewed these filings, the Court determines that Class counsel has submitted sufficient documentation of the costs incurred.

## ENHANCEMENT TO THE CLASS REPRESENTATIVE

Plaintiff applies for a $6,000 service award to compensate her for her service to the class in this matter. (Mem. P. & A. ISO Fees Mot. at 11-14.) District courts have the discretion to award incentive payments to named plaintiffs as compensation for their actions taken on behalf of the class. *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, No. 11-56376, --- F.3d ----, 2013 WL 1831760, at *5 (9th Cir. Apr. 22, 2013).

In light of all the facts, the Court concludes that Plaintiff is entitled to the $6,000 incentive award. First, she expended substantial time and effort prosecuting this action on behalf of the class, including participating in discovery, the settlement negotiations, and the settlement approval process. (Lindner Decl. ¶ 8, Doc. 225-2.) She also took a significant professional risk by serving as class representative, as her future job prospects may be impaired by her involvement in this case, because she sued her former employer. (*Id*.) Finally, Plaintiff is executing a general release that will resolve her individual claims, as well the class claims.[5] (*Id.*) Accordingly, the Court approves the $6,000 service award to Plaintiff. *Cf. Rausch v. Hartford Fin. Serv. Grp.*, No. 01-CV-1529-BR, 2007 WL 671334 (D. Or. Feb. 26, 2007) (granting $10,000 incentive fee award).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Settlement Motion and Attorneys' Fees Motion.

The parties shall file a proposed judgment in conformity with this Order forthwith.

DATED: June 13, 2013

_____
JOSEPHINE STATON TUCKER
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE

---

[5] These last two facts stand in contrast to the situation in *Radcliffe*, where the claims involved alleged violations of the Fair Credit Reporting Act brought by consumers against the major credit reporting agencies. The class representatives in *Radcliffe* were not employees or former employees of the defendants in that case. Moreover, the settlement agreement in *Radcliffe* provided that the class representatives would receive incentive awards only if they supported the settlement. The Ninth Circuit found such an arrangement sufficient *per se* "to invalidate [the] settlement." *Radcliffe*, 2013 WL 1831760, at *5.